UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.  [pending].

ALPHATUR INC.
*Plaintiff,*

     *v.*                                              ***JURY TRIAL DEMANDED***

CANARAS CAPITAL MANAGEMENT, LLC;
SARANAC CLO MANAGEMENT, LLC; and
U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION,
as successor in interest to U.S. Bank National Association,
*Defendants*.
_____/

## COMPLAINT
(FEDERAL QUESTION AND DIVERSITY)

Plaintiff, Alphatur Inc. ("Alphatur" or "Plaintiff"), by and through undersigned counsel, alleges upon personal knowledge as to its own acts and records, and upon information and belief as to all other matters, for its Complaint against Defendants as follows:

## NATURE OF THE ACTION

1. This is a notes, structured finance, trustee misconduct, and collateral impairment action arising from Plaintiff Alphatur Inc.'s US$50,000,000 economic interest in collateralized loan obligation programs known as Saranac CLO III, Saranac CLO V, and Saranac CLO VII.  The relevant economic interest began through Saranac Management Limited common shares or equivalent Saranac interests, but was later transferred, allocated, redeemed, exchanged, converted, or reconstituted into notes, bonds, or equivalent debt or enforcement rights tied to the Saranac CLO Programs. Alphatur sues on those notes, bond interests, and associated enforcement rights. It does not sue as an SML shareholder.

1

2. The central promise made to Plaintiff was straightforward. Plaintiff was investing in securities supported by identified collateral, administered through formal indentures and related collateral documents, overseen by a trustee and collateral administrator, and managed pursuant to defined eligibility, coverage, reporting, and collateral release restrictions.

3. The promise was broken. Defendants represented that the collateral would be preserved, monitored, and released only in accordance with the governing documents, but they authorized, permitted, recorded, concealed, or failed to prevent collateral releases, asset transfers, redemptions, reallocations, dissolutions, and related transactions that materially impaired the collateral base and destroyed Plaintiff's investment.

4. Defendants concealed the true condition of the collateral and the related entities, including by describing catastrophic deterioration and collateral impairment as ordinary volatility, by failing to disclose unauthorized or inadequately authorized collateral releases, by failing to provide accurate noteholder and ownership records, and by representing that certain Jersey entities had been voluntarily liquidated to reduce costs while entity-status and liquidation materials revealed unresolved issues concerning the timing, authority, solvency, asset distribution, recordkeeping, and effect of those liquidations on Plaintiff's ownership and enforcement rights.

5. The dispute is not an ordinary investment loss and is not a standalone SML shareholder registration dispute. Alphatur does not sue merely because the CLO Programs performed poorly or because SML later entered liquidation. Alphatur sues because Defendants misrepresented and omitted material facts concerning the notes, bond interests, collateral protection, collateral releases, entity status, redemption and exchange mechanics, ownership records, and trustee administration, and because those misrepresentations and omissions caused or concealed the destruction of the economic value of Alphatur's note-based rights.

2

6. Plaintiff does not plead U.S. Bank as guarantor of investment performance, as portfolio manager, or as the primary architect of the Canaras and Saranac scheme. Plaintiff pleads claims against U.S. Bank Trust Company, National Association, as successor in interest to U.S. Bank National Association, on a trustee and collateral administrator theory. U.S. Bank is liable to the extent it accepted defined duties under the indentures and related transaction documents and then executed, processed, recorded, permitted, failed to prevent, failed to investigate, failed to give required notice of, or failed to reconcile collateral releases, ownership records, trustee registers, payment records, and collateral administration records that impaired Alphatur's note-based rights.

7. Canaras Capital Management, LLC and Saranac CLO Management, LLC structured, marketed, controlled, managed, advised, or administered the CLO Programs and related Saranac entities, and made or caused to be made material misrepresentations and omissions concerning collateral protections, entity status, investment value, and the status of Plaintiff's ownership and economic rights.

8. Plaintiff brings claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against Canaras and Saranac CLO Management, control person liability under Section 20(a) of the Exchange Act to the extent applicable, limited equitable relief under the Investment Advisers Act of 1940 and Section 215 of that Act to the extent applicable, and supplemental New York law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty or aiding and abetting breach of fiduciary duty to the extent legally available, gross negligence, willful misconduct, rescission, restitution, declaratory relief, accounting, and related equitable relief. The trustee claims are pleaded on specific trustee, collateral administrator, recordkeeping, notice, collateral release, and post notice or post default duties, not on a generalized theory that a trustee guarantees investment performance.

9.  Plaintiff seeks damages exceeding US$50,000,000, rescissionary and restitutionary relief where legally available, a complete accounting of collateral movements and ownership records, declaratory relief concerning Plaintiff's rights and Defendants' duties, injunctive relief to prevent further dissipation or concealment of collateral and records, pre- and post-judgment interest, costs, attorneys' fees where permitted by law or contract, and all other relief the Court deems just and proper.

## JURISDICTION AND VENUE

10.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Plaintiff asserts claims arising under federal law, including Section 10(b) of the Exchange Act, SEC Rule 10b-5, and Section 20(a) of the Exchange Act.

11.  This Court also has federal question jurisdiction over Plaintiff's claim for limited equitable relief under the Investment Advisers Act, 15 U.S.C. § 80b-6 and 80b-15, to the extent the relevant advisory, collateral management, and related agreements fall within the scope of that Act and to the extent such relief is legally available.

12.  This Court has supplemental jurisdiction over Plaintiff's related state law claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims, including the offering, purchase, administration, management, collateralization, release of collateral, reporting, ownership recordkeeping, and alleged impairment of the Saranac CLO investments.

13.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a), § 1332(c)(1), and, as applicable to national banking associations, 28 U.S.C. § 1348. Alphatur is a Barbados corporation continued from Curaçao and has its principal place of business in Miami, Florida. Upon

4

information and belief after reasonable inquiry, none of the members of Canaras Capital Management, LLC is a citizen of Barbados or Florida, and none of the members of Saranac CLO Management, LLC is a citizen of Barbados or Florida. U.S. Bank Trust Company, National Association is a national banking association and trust bank with its main office in Portland, Oregon. The amount in controversy exceeds US $75,000, exclusive of interest and costs.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because a substantial part of the events or omissions giving rise to the claims occurred in this District, because Canaras is alleged to have its principal place of business in New York, New York; because key offering, management, reporting, collateral administration, and investor communication activities were directed from or into this District; and because Defendants used the means and instrumentalities of interstate commerce in connection with the challenged transactions and communications. Relevant contracts contain a New York forum-selection clause.

15. The federal securities claims arise from domestic transactions in securities, or from securities transactions sufficiently pleaded as domestic at this stage, because the relevant purchases, conversions, exchanges, assignments, confirmations, payments, custodial arrangements, settlement communications, and trustee administration functions involved financial intermediaries, banking channels, clearing or custodial systems, and transaction parties located in the United States, and irrevocable liability was incurred, title passed, or transaction performance occurred in the United States.

16. Defendants used the means and instrumentalities of interstate commerce and the mails in connection with the conduct alleged in this Complaint, including email, wire transfers, investor

reports, account statements, trustee and collateral records, offering materials, presentations, and communications transmitted to or from the United States.

17. The Court has personal jurisdiction over Defendants because, among other things, they transacted business in New York, purposefully directed relevant conduct to New York and the United States, participated in New York law governed transaction documents, used United States financial and communication channels, and caused foreseeable injury in connection with transactions and duties centered in whole or in part in New York and the United States.

18. Defendants have asserted in presuit correspondence that a Saranac Management Limited Confidential Information Memorandum and Sibiu subscription documents contain Jersey governing law, Royal Court of Jersey forum, and mediation provisions. Alphatur pleads, without waiver, that those asserted provisions do not defeat this action because Alphatur is not suing as a SML shareholder and is not asking this Court to resolve only an SML subscription dispute. Alphatur sues on notes, bond interests, and associated economic and enforcement rights arising from the Saranac CLO Programs, New York law governed indentures and collateral documents, United States trustee and collateral administration conduct, investor communications, collateral releases, and federal securities violations.

19. Any Jersey forum, law, or mediation provision would be at most a defense to be proven by Defendants, and cannot defeat jurisdiction or venue on the face of this pleading because the claims pleaded here arise from separate federal statutes, New York law governed CLO documents, trustee records, collateral administration duties, collateral movements, note based rights, and post-investment misconduct by Defendants who were not merely passive parties to an SML subscription relationship. And, as mentioned above, relevant contracts contain a New York forum-selection clause.

**PARTIES**

20.    Plaintiff Alphatur Inc. is a Barbados corporation continued from Curaçao and authorized to transact business in Florida as a foreign for-profit corporation. For purposes of diversity jurisdiction, Alphatur is a citizen of Barbados and Florida. No individual or entity has citizenship attributed to Alphatur for purposes of diversity jurisdiction other than Alphatur's own corporate citizenship under 28 U.S.C. § 1332(c)(1). Alphatur Inc. has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

21. Alphatur is the beneficial owner, assignee, holder, successor in interest, or person otherwise entitled to enforce the economic rights, payment rights, note based rights, collateral rights, enforcement rights, and claims arising from the Saranac CLO investments described in this Complaint. Those rights are reflected in the ownership, transfer, assignment, redemption, exchange, chain-of-title, and related materials attached as Exhibit 1 hereto, which Alphatur incorporates by reference for purposes of standing, real-party-in-interest status, and the right to sue before filing this action.

22. Defendant Canaras Capital Management, LLC is a Delaware limited liability company with its principal place of business in New York, New York. At all relevant times, Canaras structured, marketed, managed, controlled, advised, operated, or participated in the Saranac CLO Programs and related Saranac entities. Canaras made, approved, distributed, or caused to be distributed offering materials, investor communications, collateral information, and representations on which Plaintiff relied.

23. Defendant Saranac CLO Management, LLC is a limited liability company affiliated with, controlled by, acting with, or acting through Canaras and related Saranac entities. At all relevant times, Saranac CLO Management participated in the management, collateral administration,

advisory, reporting, release, transfer, or disposition activities relating to the CLO Programs and related collateral.

24. Defendant U.S. Bank Trust Company, National Association is named as successor in interest to U.S. Bank National Association with respect to the trustee role under the Saranac CLO III, Saranac CLO V, and Saranac CLO VII indentures. U.S. Bank Trust Company, National Association, U.S. Bank National Association, and any predecessor, successor, trustee, or related transaction capacity are referred to collectively in this Complaint as "U.S. Bank" or the "Trustee." Based on U.S. Bank's own October 22, 2025 response through counsel, U.S. Bank Trust Company, National Association served as successor in interest to U.S. Bank National Association as trustee under the relevant indentures, as reflected in Exhibit 3 hereto. For the CLO Programs, U.S. Bank served as trustee, collateral administrator, registrar, paying agent, custodian, calculation agent, securities intermediary, or in other related transaction capacities under the Indentures, Collateral Administration Agreements, and related documents.

25. The entities historically identified as Saranac CLO III Ltd., Saranac CLO V Ltd., Saranac CLO VII Ltd., Saranac CLO III LLC, Saranac CLO V LLC, Saranac CLO VII LLC, Saranac Advisory Ltd., and Saranac Management Limited are described in this Complaint because they were allegedly used in connection with the investment structure, note issuance, collateral administration, ownership records, redemption or exchange of interests, and collateral movement at issue. Plaintiff names only Canaras Capital Management, LLC, Saranac CLO Management, LLC, and U.S. Bank Trust Company, National Association, as successor in interest to U.S. Bank National Association, as Defendants in this Complaint.

26. The relevant Saranac branded entities were structured, operated, controlled, directed, or used by Canaras, Saranac CLO Management, or their affiliates as special purpose entities with no

8

independent business activity, no independent governance, and no independent capacity to protect noteholders apart from the conduct of the Defendants and their affiliates. All those entities were undercapitalized instrumentalities, and most have been dissolved.

27. On information and belief, several Saranac entities were organized in Jersey and later dissolved, liquidated, or wound up. The manner in which Defendants described those dissolutions, liquidations, and wind-downs to investors was materially misleading and concealed facts relevant to the existence, location, preservation, and disposition of collateral and records.

## FACTUAL ALLEGATIONS

### The CLO Programs and Plaintiff's Investment

28. Collateralized loan obligations are structured finance vehicles that issue securities backed by pools of loans or similar assets. Investors in CLO securities rely on the integrity of the collateral pool, the governing indentures, the collateral manager, the trustee, the collateral administrator, and the transaction documents that define how collateral may be acquired, held, substituted, sold, released, or otherwise disposed.

29. Canaras and Saranac acted as sub-advisers, service providers, agents, controllers, *de facto* managers, and active participants in the Saranac CLO Programs; performed or substantially participated in the collateral-management, advisory, reporting, investor-communication, credit-monitoring, and administrative functions at issue; and are liable for their own misstatements, omissions, conduct, control, substantial assistance, assumed or delegated functions, and participation in all the misconduct alleged herein.

30. The Saranac CLO Programs at issue include Saranac CLO III, Saranac CLO V, and Saranac CLO VII. The relevant CLO Programs were launched, marketed, managed, administered, or operated by Defendants and related Saranac entities between approximately 2013 and 2014,

including Saranac CLO V governed by a 2013 Indenture, Saranac CLO VII governed by an April 2014 Indenture, and Saranac CLO III governed by an August 2014 Indenture, as amended or supplemented from time to time.

31. The securities issued through the CLO Programs included notes or equivalent debt instruments supported by collateral and governed by indentures and related transaction documents. The transaction documents allegedly established eligibility criteria, concentration limitations, coverage tests, collateral quality tests, reporting obligations, collateral release restrictions, trustee duties, collateral administrator duties, and related protections for noteholders.

32. Plaintiff invested US$50,000,000 in the Saranac structures, initially through equity or common share interests associated with Saranac Management Limited or related Saranac entities, which were later transferred, allocated, redeemed, exchanged, converted, assigned, or otherwise reflected as interests in bonds, notes, equivalent debt instruments, payment rights, or associated enforcement rights tied to the Saranac CLO Programs, as evidenced by the ownership materials attached as **Exhibit 1.**

33.      Canaras's July 2013 Saranac CLO Program presentation, excerpted as part of **Exhibit 4** hereto, represented that Canaras was a United States Securities and Exchange Commission registered investment adviser headquartered in New York, that it specialized in managing corporate CLOs, and that it was launching the Saranac CLO Program. The presentation further represented that the Saranac CLO Program was projected to include three CLOs with total assets of US$900 million to US$1.2 billion and equity of approximately US$100 million, that one existing Canaras CLO with US$300 million in assets and US$50 million in equity would serve as the program anchor, that both equity and assets would migrate to Saranac CLOs, and that investors

would hold shares in Saranac Management Limited, a holding company that would own the equity of each Saranac CLO.

34. Plaintiff invested in reliance on representations in offering memoranda, preliminary offering materials, final offering materials, indentures, collateral management agreements, collateral administration agreements, investor presentations, account statements, activity reports, trustee materials, and written communications concerning the structure, collateralization, administration, and protection of the CLO investments.

35. Plaintiff was a sophisticated investor but not an insider. Plaintiff did not control the issuer entities, the trustee records, the collateral accounts, the collateral release process, the collateral administrator records, the register, the underlying asset records, or the internal books of Canaras, Saranac CLO Management, U.S. Bank, or the Saranac entities.

36. Defendants and related Saranac entities possessed exclusive or superior knowledge of the collateral status, collateral movement, collateral releases, entity status, ownership registers, redemption records, exchange records, KYC records, noteholder registers, and transaction records necessary to determine the true condition of Plaintiff's investment.

37. Plaintiff reasonably understood, and was repeatedly led to understand, that the CLO investments were supported by pledged collateral, that collateral could not be released except in compliance with the governing transaction documents, that U.S. Bank would act as an independent trustee or collateral administrator with duties concerning collateral and records, and that Canaras and Saranac CLO Management would manage and administer the CLO Programs prudently, faithfully, and consistently with the transaction documents and applicable law.

38. The same July 2013 Saranac CLO Program presentation represented that a professional manager like Canaras would manage the CLO portfolio and that a major bank would act as

independent trustee, hold the assets, and control all trade settlements, cash receipts, and disbursements. Those statements were material because they described the trustee and collateral-control architecture on which Plaintiff and its predecessors relied.

39.  The presentation further represented that operations and fraud risk were minimized because the Trustee controlled all aspects of asset settlement, custody, fund compliance, and cash receipts and disbursements, and that the Trustee was liable for lapses in the performance of those duties. Those representations are consistent with, and independent support for, Plaintiff's allegations that trustee control, custody, settlement, compliance, recordkeeping, and payment functions were central protections of the Saranac CLO structure.

40.  The value of Plaintiff's notes, bonds, or associated economic rights depended directly on the existence, preservation, and integrity of the pledged collateral. Any unauthorized, undisclosed, inadequately authorized, conflicted, or commercially unreasonable release, transfer, substitution, write off, redemption, liquidation, or dissipation of collateral was material to Plaintiff.

41.  Defendants knew that collateral protection was the core feature of the CLO investments and that a reasonable investor would view any substantial collateral release, collateral impairment, entity dissolution, negative equity condition, ownership record dispute, or trustee refusal to recognize ownership as material.

**Plaintiff's Ownership and Standing**

42.  This is a notes case. Alphatur does not sue as a shareholder of Saranac Management Limited and does not ask this Court to adjudicate only whether Alphatur appeared on an SML common share register. The claims asserted here arise from Alphatur-held notes, bond interests, equivalent debt interests, economic rights, enforcement rights, and claims associated with Saranac CLO III, Saranac CLO V, and Saranac CLO VII.

43. The relevant economic interest began through common shares or equivalent interests associated with Saranac Management Limited or related Saranac entities. Those interests were later transferred, allocated, assigned, redeemed, exchanged, converted, or otherwise reconstituted into notes, bonds, or equivalent debt or economic interests associated with the Saranac CLO Programs.

44. The actionable rights at issue are the rights arising from the notes, bonds, equivalent debt interests, collateral protections, indentures, collateral administration agreements, collateral management agreements, account records, trustee records, redemption records, exchange records, and associated claims that followed from that transfer, redemption, exchange, conversion, or succession.

45. Alphatur acquired the relevant rights before filing this action. The transfer, allocation, assignment, redemption, exchange, conversion, or succession included the right to receive payments, to enforce transaction document protections, to receive notices and reports, to obtain an accounting, and to assert claims arising from impairment of the collateral and destruction of the value of the notes or equivalent interests. **Exhibit 1** is pleaded as an operative standing exhibit and reflects the Sibiu-to-Alphatur transfer or assignment, redemption/exchange/conversion records, Saranac activity or account summaries reflecting movement from Sibiu to Alphatur, and available note or bond identifiers, custodial records if applicable.

46.    On November 15, 2024, Saranac Management Limited sent Sibiu Portfolio Management Inc. a Notice of Compulsory Redemption of Preference Shares, attached or excerpted as part of **Exhibit 1**. The notice stated that SML indirectly held the Income Notes of Saranac CLO III Ltd., Saranac CLO V Ltd., and Saranac CLO VII Ltd.; that those Income Notes were held by Saranac CLO Management, LLC; and that SML held membership interests in Saranac CLO

13

Management, LLC equating to a 100% interest in those Income Notes. The notice further stated that Saranac CLO Management, LLC would redeem those membership interests by exchanging them for all of the Income Notes and that SML would distribute ownership of the Income Notes to SML former shareholders following the redemption of the Preference Shares.

47.    The November 15, 2024 notice allocated to Sibiu Portfolio Inc. 15,698,000 Income Notes of Saranac CLO III Ltd., 17,267,000 Income Notes of Saranac CLO V Ltd., and 17,036,000 Income Notes of Saranac CLO VII Ltd., for a total allocation of 50,001,000 Income Notes, plus a cash distribution of US$502.31. Those allocations materially corroborate the pleaded movement from an SML share-based structure into specific Saranac CLO Income Notes and related note-based rights.

48.    The November 15, 2024 notice also stated that, at issuance, the Income Notes of the SML CLOs were deposited and held at The Depository Trust Company and that U.S. Bank was the DTC member bank with whom the Income Notes were registered. That statement is material because it places the Income Notes, registration function, and delivery mechanics within the DTC/U.S. Bank record architecture and supports Plaintiff's allegation that U.S. Bank and the Saranac-related Defendants possessed, controlled, or had access to records necessary to reconcile the Sibiu-to-Alphatur chain, Income Note allocation, custodial delivery, and ownership recognition issues alleged in this Complaint.

49.  Saranac activity reports, account summaries, confirmations, or similar records reflected the movement of the economic interest from Sibiu Portfolio Management Inc. to Alphatur, and further reflected a redemption, exchange, conversion, or reclassification into bonds, notes, or note based economic interests associated with the Saranac CLO Programs. **Exhibit 1** reflects payments or account activity in Alphatur's name in connection with the Saranac interests.

50. Alphatur alone seeks relief for its own economic loss, enforcement rights, and claims arising from the Saranac CLO investments.

51. After the transfer, allocation, assignment, redemption, exchange, conversion, or succession, Alphatur or its custodial intermediaries maintained records, account statements, activity summaries, confirmations, communications, or other transaction materials reflecting Alphatur's beneficial ownership, economic interest, or enforcement rights in the notes, bonds, or equivalent interests.

52. Canaras, Saranac CLO Management, Saranac related entities, U.S. Bank, or related transaction participants either generated, received, maintained, were required to maintain, or were required to reconcile records concerning the transfer, redemption, exchange, conversion, note issuance, ownership, beneficial interest, collateral status, and payment rights at issue.

53.  All Defendants were provided with, possessed, or had access to Saranac generated account summaries, activity reports, transaction records, trustee records, collateral administration records, or similar materials reflecting Alphatur's claimed interest, but failed or refused to reconcile those materials with trustee registers, issuer registers, KYC files, redemption records, exchange records, note records, and collateral administration records.

54.  Canaras later contended through external counsel that Alphatur allegedly never satisfied Jersey KYC protocols to become a registered holder of SML common shares, that the common share register at liquidation reflected Sibiu rather than Alphatur, and that activity summary reports reflecting movement to Alphatur were generated in 2025 and backdated to 2023 "as an accommodation." Alphatur disputes any characterization that defeats its note based rights. The dispute confirms, at minimum, Defendants' control over the records necessary to trace and enforce Alphatur's rights.

55. Any alleged KYC, registration, administrative, or recordkeeping defect was caused by, known to, controlled by, or correctable by all Defendants and their related entities and cannot be used by Defendants to extinguish the economic rights, note rights, bond rights, collateral rights, enforcement rights, or claims that Defendants and related entities generated, transferred, recognized, administered, or were required to reconcile.

56. U.S. Bank's later statement that it had no record of Alphatur as holder of any note issued under the indentures does not defeat standing. It is part of the misconduct pleaded. The statement reflects an inaccurate, incomplete, unreconciled, or wrongfully maintained trustee record, or a failure to account for the transfer, redemption, exchange, conversion, beneficial ownership, custodial holding, or assignment chain by which Alphatur acquired the note based rights.

57. Alphatur is therefore the real party in interest with respect to the claims asserted in this Complaint because it owns, beneficially owns, holds, has been assigned, succeeded to, or is otherwise entitled to enforce the economic rights, note rights, bond rights, collateral rights, and claims arising from the Saranac CLO investments described herein.

**Pre-Suit Responses Confirm the Ownership, Recordkeeping, and Trustee Disputes**

58. On August 12, 2025, Alphatur's counsel, WDA Legal, sent a demand letter concerning Alphatur's asserted loss of US$50,000,000, identifying the 2013 and 2014 Saranac CLO indentures, collateral management agreements, and collateral administration agreements, demanding an accounting of collateral releases, and asserting that U.S. Bank's trustee and collateral administrator duties included preserving and protecting the Trust Estate, acting prudently, providing timely notices of defaults or material events, and serving the interests of noteholders and, where applicable under the governing documents, secured noteholders.

16

59. On August 26, 2025, WDA Legal sent a further demand letter challenging statements in a July 2023 Program Review, including statements or implications that investor losses were normal CLO market volatility, that equity value had been restored, and that losses from borrower aggressive actions were not the product of trustee or manager misconduct. In reality, those statements and omissions were materially misleading because they failed to disclose collateral releases, covenant failures, asset removals from collateral packages, borrower actions that impaired collateral, and the Trustee's and managers' failure to protect the collateral base.

60. The August 12, 2025 demand letter also specifically identified the core transaction documents then known to Alphatur, including the November 26, 2013 Saranac CLO V Indenture, the April 4, 2014 Saranac CLO VII Indenture, the August 28, 2014 Saranac CLO III Indenture, the May 15, 2018 First Supplemental Indenture for Saranac CLO III, collateral management agreements, collateral administration agreements, and related amendments. The demand further requested a complete chronological accounting of all collateral releases, the legal basis and authorizing actions for each release, all counterparties or transferees, all notices, consents, waivers, amendments, approvals, and votes, and a written explanation of how U.S. Bank, Canaras, and Saranac CLO Management discharged their duties from the inception of each CLO Program to date. Defendants' failure or refusal to provide a complete reconciled response evidences that the relevant facts are in Defendants' exclusive or superior possession and that Plaintiff was deprived of the records necessary to protect and enforce its note-based rights.

61. On September 22, 2025, counsel for Canaras responded that the demand letters contained alleged errors, stated that Canaras would not litigate by letter, and asserted that the shareholder clients were only investors in Saranac Management Limited, had no privity or relationship with other Saranac entities or with U.S. Bank National Association, and had no legal or equitable

interest in any CLO notes or programs. Counsel further asserted that Alphatur did not appear on the relevant investor registers associated with Saranac Management Limited. Plaintiff pleads these assertions as Defendants' disputed position, not as admitted facts.

62. The September 22, 2025 response also asserted that the Saranac Management Limited Confidential Information Memorandum and related subscription materials selected Jersey law, the Royal Court of Jersey, and mediation before litigation. However, this Complaint does not seek a shareholder adjudication against SML. Instead, it challenges federal securities fraud, New York law governed transaction documents, trustee and collateral duties, collateral release misconduct, ownership recordkeeping failures, and the refusal to reconcile Alphatur's economic rights after Defendants and related entities generated or relied upon inconsistent records.

63. On September 29, 2025, counsel for Canaras further asserted that Alphatur never satisfied KYC protocols under Jersey law to become a registered holder of SML common shares, that the common share register at liquidation reflected Sibiu Portfolio Management Inc. rather than Alphatur, and that activity summary reports reflecting a contribution of shares by Sibiu to an affiliate were prepared in 2025 and backdated to 2023 as an accommodation to Sibiu if Alphatur cleared KYC.

64. The September 29, 2025 response is independently material because it confirms, at minimum, that Canaras and its counsel recognized a chain of records involving Sibiu, SML common shares, Alphatur, KYC issues, activity summary reports, alleged backdating, and liquidation records. Plaintiff pleads that these facts support Alphatur's standing because they show that Defendants and related entities recognized, processed, generated, or disputed records concerning Alphatur's economic rights. In the alternative, those facts show that Defendants

18

created, maintained, controlled, or relied upon inconsistent records that materially impaired Alphatur's ability to verify, protect, and enforce its investment rights.

65. On October 22, 2025, counsel for U.S. Bank responded on behalf of U.S. Bank Trust Company, National Association as successor in interest to U.S. Bank National Association as trustee under the indentures identified in an attachment to that response covering Saranac CLO III, Saranac CLO V, and Saranac CLO VII. See **Exhibit 3**, hereto. That response confirmed the existence of the relevant indentures and U.S. Bank's trustee succession position, while denying that U.S. Bank was party to the alleged SML or Saranac CLO Management transactions and stating that U.S. Bank had no record of Alphatur, under multiple name variants, being a holder of any note issued under any of the indentures.

66. The October 22, 2025 response further stated that U.S. Bank would place a standard litigation hold on documents in its possession with respect to the indentures. This litigation hold acknowledgment confirms that U.S. Bank possessed, controlled, or had access to documents relevant to the indentures, trustee records, collateral administration, collateral movements, notices, registers, and ownership records.

67. These presuit responses confirm the central disputes in this case: whether Plaintiff's economic rights were properly recorded and recognized; whether Defendants' own records were accurate, complete, and reconciled; whether collateral was released or impaired without required authority or notice; whether the Trustee's records were properly maintained; whether Saranac and Canaras used KYC, register, and liquidation assertions to avoid accountability after the investment was impaired; and whether Plaintiff was deprived of the collateral and records that were supposed to protect its investment.

68. Defendants' refusal to provide a complete accounting, complete collateral release history, complete ownership register history, complete KYC file, complete redemption and exchange records, complete trustee register, and complete collateral administration records prevented Plaintiff from pleading additional facts that are uniquely within Defendants' possession. Plaintiff therefore pleads those matters on information and belief where appropriate, based on the documents, correspondence, investor materials, transaction records, and admissions presently available to Plaintiff.

**Defendants' Contractual and Transaction Duties**

69. The Indentures and related transaction documents imposed duties on the trustee, collateral administrator, collateral manager, issuer entities, and related transaction parties concerning custody, administration, release, reporting, calculation, recordkeeping, notice, and preservation of collateral. The specific contractual duties presently identified by Plaintiff include, without limitation, duties reflected in or arising from Indenture provisions concerning preservation of the Trust Estate and collateral assets, prudent trustee conduct, notice of defaults or material events, noteholder protections applicable to the relevant classes of notes, maintenance of security interests to the extent provided in the governing documents, noteholder and register administration, collateral release conditions, and trustee liability for negligence, including Sections 5.5, 6.1, 6.1(c), 6.2, 6.3, 6.16, 7.5, and 7.19 of the applicable indentures or related supplemental indenture provisions. The operative indentures and the provisions necessary to evaluate duties, standing, no-action clauses, exculpation, forum, governing law, default, notice, collateral-release restrictions, registrar duties, collateral-administrator duties, and trustee duties are excerpted as Exhibit 2, hereto.

70. The duties breached by all Defendants include mandatory, ministerial, administrative, contractual, trustee, collateral administrator, collateral management, and good faith duties arising under the Indentures, Collateral Management Agreements, Collateral Administration Agreements, offering materials, account records, transaction documents, and New York law.

71. Among other things, the governing documents represented or required that collateral would be held or administered for the benefit of noteholders, that collateral would not be released except in compliance with defined transaction conditions, that material events and defaults would be reported or noticed, that accurate records and registers would be maintained, that security interests in collateral assets would be preserved, and that collateral reports, account records, and payment information would be administered consistently with the transaction documents.

72. U.S. Bank, in its capacity as trustee, collateral administrator, registrar, paying agent, custodian, calculation agent, securities intermediary, or related transaction capacity, owed contractual and other duties to perform the functions assigned to it under the transaction documents with due care, good faith, and the degree of prudence required by the applicable documents and law.

73. Canaras and Saranac CLO Management, in their capacities as collateral manager, adviser, controller, manager, sponsor, operator, or transaction participant, owed contractual, fiduciary, advisory, and good faith duties to manage and administer the CLO Programs and related entities consistently with the transaction documents, investor representations, and applicable law.

74. The duties at issue are not limited to generalized investment performance. They include specific duties concerning collateral release restrictions, accuracy of records, accuracy of investor communications, avoidance or disclosure of conflicts, notice of material events, preservation of

records, and truthful disclosure of facts necessary to prevent prior statements from becoming misleading.

**U.S. Bank's Trustee and Collateral Administrator Liability**

75.  U.S. Bank's liability is based on a trustee and collateral administrator theory. Alphatur does not allege that U.S. Bank guaranteed investment performance, managed the portfolio as collateral manager, made every offering representation, or served as the principal architect of the Canaras and Saranac conduct.  U.S. Bank is liable because it accepted defined trustee, collateral administrator, registrar, paying agent, custodian, calculation agent, securities intermediary, recordkeeping, notice, collateral release, and collateral administration duties under the governing transaction documents and failed to perform those duties.

76. U.S. Bank's pre default duties are pleaded as specific contractual, ministerial, administrative, and document based duties, including duties to maintain and reconcile records, administer collateral in accordance with the governing documents, process or refuse collateral releases only in compliance with transaction conditions, maintain or rely upon accurate registers and payment records, issue or transmit required notices, preserve transaction records, preserve the Trust Estate and collateral assets to the extent required by the governing documents, and comply with the duties reflected in or arising from provisions identified in presuit correspondence, including Sections 5.5, 6.1, 6.1(c), 6.2, 6.3, 6.16, 7.5, and 7.19 of the applicable indentures or related supplemental indenture provisions. **Exhibit 2**, hereto.

77.  To the extent a default, event of default, notice of default, or equivalent triggering event existed or should have been recognized,  U.S. Bank's duties became heightened and required it to exercise the rights and powers available to it with the care and skill that a prudent person would exercise under the circumstances, including by investigating collateral impairments, refusing

22

unauthorized releases, protecting the Trust Estate, providing required notices, and preserving and reconciling ownership and collateral records.

78.  U.S. Bank's October 22, 2025 response confirms that U.S. Bank Trust Company, National Association, as successor in interest to U.S. Bank National Association, served as trustee under the Saranac CLO III, Saranac CLO V, and Saranac CLO VII indentures identified in the attachment to that letter. The letter also confirms that U.S. Bank would place a standard litigation hold on documents in its possession with respect to the indentures.

79.  In the same October 22, 2025 response, U.S. Bank asserted that it had no record of Alphatur Inc., Alphatur, Inc., or Alpathur, Inc. being a holder of any note issued under any of the indentures. Alphatur pleads that this assertion was false, materially incomplete, or made without a reasonable reconciliation of trustee registers, issuer records, custodial records, redemption records, exchange records, transfer records, account summaries, and collateral administration records.

80.  U.S. Bank's denial is especially material in light of SML's November 15, 2024 notice, which stated that the SML CLO Income Notes were deposited and held at DTC and that U.S. Bank was the DTC member bank with whom the Income Notes were registered. At minimum, those facts required reconciliation of DTC registration records, trustee records, SML and SCM records, redemption records, delivery instructions, Sibiu records, and Alphatur's chain-of-title materials before any categorical denial of Alphatur's note-based interest could be made.

81. U.S. Bank's statement is a disputed factual issue and part of the alleged recordkeeping failure. If the trustee records omitted Alphatur, the omission supports Alphatur's claim that the trustee and related transaction participants failed to maintain, reconcile, verify, or disclose accurate ownership, noteholder, beneficial ownership, and payment records after the transfer, redemption, exchange, conversion, or succession of Alphatur's interest.

82. U.S. Bank's trustee liability is independent of the SML shareholder registration issue, which is anyway irrelevant here. The trustee issues concern the Saranac CLO indentures, notes, collateral, collateral releases, collateral administration, trustee registers, payment and ownership records, notices, and Trust Estate protections. They do not depend on treating Alphatur as a mere SML shareholder or requiring this Court to decide an SML subscription dispute.

83. U.S. Bank is liable because it executed, processed, recorded, permitted, failed to stop, failed to investigate, failed to disclose, or failed to provide required notice of collateral releases, collateral substitutions, asset removals, write offs, payment diversions, ownership record discrepancies, note register defects, or Trust Estate impairments inconsistent with the governing documents or with its trustee and collateral administration duties.

**The Unauthorized and Undisclosed Collateral Releases**

84. Despite the representations and duties alleged above, Defendants authorized, permitted, directed, recorded, failed to prevent, or failed to disclose the release, transfer, substitution, write off, dissipation, impairment, or removal of collateral that had been represented to support Plaintiff's investment.

85. On information and belief, the collateral releases and related transactions occurred after the inception of the CLO Programs and over a period of years. The exact dates, amounts, recipients, approvals, conditions, and transaction mechanics are in Defendants' exclusive or superior possession. The representative collateral-impairment and financial-impairment materials presently available to Alphatur are attached as **Exhibit 6** hereto. To the extent Exhibit 6 does not contain the complete collateral history, the absence of those records is itself part of the accounting and recordkeeping misconduct alleged here.

86. The releases were not immaterial or routine portfolio adjustments. They impaired collateral coverage, weakened the credit support for Plaintiff's notes, altered the risk profile of Plaintiff's investment, reduced recoverability, and materially contributed to the loss of Plaintiff's US$50,000,000 investment.

87. U.S. Bank either executed, recorded, processed, permitted, failed to stop, failed to investigate, or failed to disclose collateral releases even though the governing documents limited releases of collateral and imposed duties relating to custody, administration, records, reports, notices, and collateral compliance.

88. Canaras and Saranac CLO Management authorized, directed, approved, caused, concealed, benefited from, or failed to disclose collateral releases and related transfers that were inconsistent with the representations made to Plaintiff and with the governing transaction documents.

89. On information and belief, certain releases or transfers benefited affiliated entities, favored creditors, related parties, third parties, or entities controlled by or connected to Defendants, while harming Plaintiff and similarly situated noteholders.

90. Defendants failed to provide Plaintiff with timely, complete, and accurate notice that pledged collateral had been released, transferred, substituted, written off, impaired, or otherwise placed beyond the protection represented in the offering and transaction documents.

91. Defendants failed to provide Plaintiff with timely, complete, and accurate notice that the net asset value, collateral coverage, credit support, and expected cash flows of the CLO Programs had been materially reduced by collateral releases, asset deterioration, entity dissolutions, or related transactions.

92. Defendants continued to transmit or permit investor communications, reports, presentations, and account information that omitted material facts concerning the collateral

releases and, in certain instances, affirmatively suggested that collateral protections remained intact or that losses were ordinary, expected, or market based rather than the result of undisclosed collateral impairment and administrative misconduct.

93. The collateral releases and related omissions caused the CLO Programs to become materially weaker and ultimately unable to satisfy obligations owed to Plaintiff, causing damages exceeding US$50,000,000.

**Saranac Entity Dissolutions, Redemption Issues, and Ownership Record Irregularities**

94. Defendants used layers of Saranac branded special purpose entities, including entities organized in Jersey and other jurisdictions, to structure the investments, circulate interests, issue or exchange notes or bonds, administer collateral, and maintain or obscure records concerning ownership and collateral.

95. Certain Saranac entities lacked meaningful independent governance, employees, offices, operations, or oversight separate from Canaras, Saranac CLO Management, and related persons.

96. The entity-status materials attached as **Exhibit 5** hereto reflect that entities associated with the Saranac structure were wound up and dissolved after SML's assets and interests were distributed, leaving unresolved issues concerning timing, authority, solvency, recordkeeping, and the effect on Plaintiff's ownership and enforcement rights.

97. The distinction between routine cost-saving liquidation and unresolved entity-status, liquidation, and wind-down issues was material because it bore directly on the governance, solvency, administration, recordkeeping, transparency, and integrity of the entities through which Plaintiff's investment and collateral interests were held or administered.

98. Canaras activity reports reflected that common shares originally acquired by Sibiu and later transferred or allocated to Alphatur were redeemed and exchanged for bonds or notes associated with the Saranac CLO structures.

99. SML's counsel later asserted that SML was placed into liquidation, creating unresolved questions concerning whether the common share redemption, bond issuance, note exchange, ownership transfer, and subsequent liquidation were properly authorized, properly documented, and properly disclosed to Plaintiff.

100. If SML validly redeemed the common shares and issued or exchanged them for bonds or notes before any liquidation, then the liquidation should not defeat Alphatur's ownership of the bonds, notes, or associated claims. If, however, the redemption, exchange, or issuance was not validly authorized or completed, Plaintiff's rights were materially prejudiced by conduct and omissions controlled by Defendants and related Saranac entities.

101. Defendants failed to provide the corporate, statutory, register, KYC, redemption, assignment, exchange, custody, and liquidation documents necessary to resolve these issues, despite Plaintiff's need for those documents to verify the status and protection of its investment.

102. The entity dissolutions, ownership record irregularities, KYC assertions, redemption and exchange uncertainty, trustee register inconsistency, and missing collateral records were not isolated administrative issues. They were part of the same course of conduct through which Plaintiff's investment became opaque, unrecognized, impaired, and ultimately destroyed.

**Particularized Misstatements and Omissions**

103. Plaintiff identifies the following representative misstatements and omissions based on the documents and communications presently available to Plaintiff, including the representative Canaras/Saranac investor communications attached as **Exhibit 4**, hereto. The allegations below

identify the documents or communication categories, the responsible speaker or entity group, the subject matter, why the statements were false or misleading when made, and why the relevant facts were material. Additional particulars concerning internal approvals, distribution lists, drafting responsibility, collateral movements, trustee files, and transaction records are in Defendants' exclusive or superior possession.

104. For avoidance of doubt, Alphatur does not plead the federal securities claim as a holder-only claim. Alphatur alleges that it purchased, acquired, received by assignment, exchanged, converted, redeemed, or otherwise succeeded to securities or security-based enforcement rights before filing this action, as reflected in **Exhibit 1**. Post-investment statements and presuit responses are evidence of concealment, scienter, ownership-record irregularities, trustee-record failures, accounting failures, and equitable relief, and also as state-law and contract-related misstatements to the extent legally available.

105. First, the preliminary and final offering materials, the July 2013 Saranac CLO Program presentation, indentures, collateral management agreements, collateral administration agreements, and related transaction materials represented that the CLO Programs would be governed by eligibility criteria, concentration limits, coverage tests, collateral quality requirements, collateral release limitations, trustee oversight, collateral administration procedures, security interest and Trust Estate protections, noteholder protections, and defined procedures for collateral administration and notice. The July 2013 presentation (**Exhibit 4** hereto) specifically represented that investors would hold shares in Saranac Management Limited, a holding company that would own the equity of each Saranac CLO; that Canaras would manage a diversified CLO portfolio; that a major bank trustee would hold the assets and control trade settlements, cash receipts, and disbursements; and that operations and fraud risk were minimized by trustee control and trustee

liability for performance lapses. These materials are statements made or approved by Canaras, Saranac CLO Management, the relevant Saranac instrumentalities, or persons acting under their authority. The operative transaction provisions are excerpted as **Exhibit 2**.

106. Those representations were materially misleading because Defendants failed to disclose that collateral could be and was released, transferred, written off, substituted, dissipated, or impaired without the authority, notice, approvals, compliance, or protections represented to Plaintiff.

107. Second, investor presentations and communications distributed in or around 2022 and 2023, including the July 2023 Program Review and related investor communications included in **Exhibit 4** hereto, purported to disclose severe market stress, borrower distress, negative equity, and impairment risk, but characterized the deterioration principally as market-driven credit deterioration, ordinary volatility, or non-actionable investment fluctuation while omitting the specific collateral-release, recordkeeping, ownership-recognition, trustee-reconciliation, and authorization issues pleaded in this Complaint.

108. Those statements and omissions were materially misleading because, although they disclosed deterioration and impairment risk, they failed to disclose facts necessary to determine whether collateral had been removed, impaired, transferred, released, or placed beyond the protections represented to Plaintiff; whether any such actions were authorized, noticed, recorded, or reconciled in accordance with the governing documents; and whether ownership, register, custodial, trustee, and Saranac-generated records were complete, accurate, and consistent with Plaintiff's economic and enforcement rights.

109. Third, for the trustee, declaratory, accounting, recordkeeping, and equitable claims, U.S. Bank, through outside counsel, stated in its October 22, 2025 letter attached as Exhibit 3 that it

had no record of Alphatur Inc., Alphatur, Inc., or Alpathur, Inc. being a holder of any note issued under any of the indentures, while also acknowledging that U.S. Bank Trust Company, National Association served as successor trustee under the Saranac CLO III, V, and VII indentures.

110. That statement was materially false, materially incomplete, or made without reasonable reconciliation because Canaras generated records, activity reports, account summaries, redemption records, exchange records, or similar documents reflected Alphatur's economic interest and because U.S. Bank, as trustee or collateral administrator, had or was required to maintain records sufficient to reconcile noteholder, beneficial ownership, payment, collateral, and Trust Estate information before making a categorical denial.

111. Fourth, for the ownership, standing, accounting, concealment, declaratory, equitable, and state-law claims, Canaras, through counsel, asserted in September 2025 that Alphatur had no legal or equitable interest in any CLO notes or programs, that Alphatur did not appear on relevant investor registers, that Sibiu remained reflected on the common share register at liquidation, that activity summary reports were prepared in 2025 and backdated to 2023, and that those reports had no legal import. Those assertions were materially misleading or incomplete because they omitted Defendants' role in creating, maintaining, controlling, approving, or relying upon the very records used to recognize, reject, transfer, allocate, redeem, exchange, or obscure Plaintiff's economic rights, and because they are contradicted or materially qualified by the ownership materials attached as **<u>Exhibit 1.</u>**

112. Fifth, Defendants omitted from presuit responses and prior investor communications a complete explanation of how an investment recorded through Sibiu and reflected for Alphatur could simultaneously be treated as economically transferred, administratively unregistered, internally backdated, legally ineffective, liquidated through SML, and not recognized by the

Trustee. A reasonable investor would consider those facts material because they directly affected ownership, enforcement rights, collateral rights, payment rights, and litigation rights.

113. Sixth, Defendants omitted that the ownership, transfer, redemption, exchange, KYC, register, and custodial records concerning Plaintiff's investment were inconsistent, incomplete, unreconciled, or disputed in a manner that materially threatened Plaintiff's ability to enforce its rights and recover on the notes or associated collateral.

114. Each of these misstatements and omissions was material because a reasonable investor would consider it important in deciding whether to purchase, hold, redeem, enforce, settle, or litigate rights in securities whose value depended on collateral integrity, trustee administration, manager compliance, ownership recognition, and accurate disclosure.

115. All Defendants had a duty to disclose the omitted facts because they made partial statements about collateral protection, trustee oversight, entity status, investment performance, ownership records, and collateral condition that were misleading without full disclosure; because they possessed superior and exclusive knowledge; because they undertook to communicate with Plaintiff and investors about these matters; because Plaintiff specifically demanded a collateral-release accounting, authorizing documents, notices, consents, waivers, approvals, and explanations of trustee and manager compliance; and because the transaction documents and applicable law imposed reporting, notice, recordkeeping, trustee, management, advisory, and good faith obligations.

**Scienter, Knowledge, Notice, and Reckless Disregard**

116.      Defendants acted knowingly, intentionally, or with severe recklessness in making or permitting the misstatements and omissions alleged in this Complaint.

117.     Canaras and Saranac CLO Management had scienter because they structured, marketed, operated, managed, advised, or controlled the CLO Programs and related Saranac entities; possessed or had access to collateral records, entity records, investor records, account records, and transaction documents; knew or recklessly disregarded the limits on collateral releases; knew or recklessly disregarded the condition and status of the relevant collateral and entities; knew or recklessly disregarded the ownership record irregularities later asserted against Alphatur; and had a financial motive to conceal collateral impairment, preserve management or advisory fee streams, avoid investor scrutiny, and prevent earlier enforcement action.

118.     U.S. Bank had knowledge, notice, or reckless disregard relevant to the trustee, collateral administrator, gross negligence, willful misconduct, recordkeeping, notice, and accounting claims because it served as trustee, collateral administrator, registrar, paying agent, custodian, calculation agent, securities intermediary, or related transaction party; possessed or had access to trustee registers, collateral administration records, collateral release records, payment records, reports, certificates, notices, and transaction records; and either executed, recorded, permitted, failed to prevent, failed to investigate, failed to disclose, or failed to reconcile collateral releases and ownership record irregularities.

119.     Defendants' scienter is supported by the magnitude of Plaintiff's loss, the centrality of collateral protection to the CLO Programs, the fact that collateral releases and entity dissolutions were core transaction matters rather than peripheral matters, the exclusive or superior access Defendants had to the relevant records, and the implausibility that the parties charged with managing, administering, reporting on, or safeguarding the collateral and ownership records could innocently describe collateral deterioration as ordinary volatility, entity dissolution as voluntary

liquidation, or ownership records as nonexistent without reconciling the Saranac-generated records and trustee records.

120.     Canaras's April 2, 2019 Viewpoint on Concerns in the Leveraged Loan Market, excerpted as part of **Exhibit 4**, as relied upon by Plaintiff, further supports scienter, materiality, and superior knowledge. In that publication, Canaras acknowledged that negative covenants provide collateral protection and fraud prevention by controlling cash and asset transfers, limiting dividends, and setting terms for refinancings and loan prepayments, and Canaras represented that independent analysts like Canaras continuously monitored corporate loan securitization assets. These statements confirm that collateral movements, asset transfers, covenant protections, borrower stress, and credit monitoring were central matters within Canaras's expertise, responsibility, and knowledge.

121.     Defendants' scienter is also supported by the alleged effort to describe collateral deterioration as expected volatility, to characterize liquidation, wind-down, or entity-status issues as routine cost-saving administration, to omit the fact and effect of collateral releases, and to deny any record of Alphatur's noteholder status without adequately reconciling Saranac generated account summaries and trustee records.

122.     Defendants' knowledge, motive, or reckless disregard is further supported by their financial incentives. Canaras, Saranac CLO Management, and related entities allegedly benefited from continuing management, advisory, administration, or related fees and from avoiding disclosure that could have triggered investor action, default remedies, regulatory scrutiny, collateral preservation efforts, or litigation. U.S. Bank allegedly benefited from maintaining its trustee and administration roles while avoiding responsibility for collateral administration, recordkeeping, notice, and reconciliation failures.

123.     The inference of scienter is cogent and at least as compelling as any nonculpable inference because the concealed facts concerned the very collateral, records, entity status, ownership recognition, and transaction duties that Canaras and Saranac CLO Management were responsible for managing, administering, approving, or accurately reporting, and because the subsequent presuit positions concerning backdated records, missing registers, and non-recognition of Alphatur are consistent with concealment or reckless disregard rather than innocent market loss alone.

**Loss Causation, Transaction Causation, and Damages**

124.     Plaintiff relied on Defendants' misrepresentations and omissions when purchasing, acquiring, receiving by assignment, exchanging, converting, redeeming, accepting, or succeeding to the securities and security-based rights alleged in this Complaint, and separately when maintaining, enforcing, and refraining from earlier protective action concerning the Saranac CLO investments for purposes of the state-law, contract, accounting, declaratory, and equitable claims.

125.     Plaintiff's reliance was reasonable because Defendants were the parties responsible for structuring, managing, advising, administering, and safeguarding the CLO Programs, and because Plaintiff could not independently verify the true status of the collateral, collateral releases, trustee records, ownership registers, entity dissolutions, KYC records, redemption documents, or internal transaction approvals.

126.     Defendants' misrepresentations and omissions were a transaction cause of Plaintiff's loss because Plaintiff would not have purchased, acquired, accepted, exchanged, converted, redeemed, received by assignment, or succeeded to the relevant securities or rights, or would have done so only on materially different terms, had it known the truth. For the non-securities claims, Plaintiff also would not have maintained the investment, would have sought

earlier redemption, would have demanded collateral preservation, would have sought judicial or arbitral relief earlier, or would have acted on materially different terms had it known the truth.

127.     Defendants' misrepresentations, omissions, collateral releases, recordkeeping failures, ownership recognition failures, and entity dissolution concealment were a proximate cause of Plaintiff's losses because they impaired the collateral, prevented timely protective action, reduced recoverability, destroyed note value, and caused Plaintiff to lose more than US$50,000,000.

128.     When the truth concerning collateral impairment, entity status, ownership records, and trustee recognition began to emerge, Plaintiff's investment was revealed to be materially impaired or effectively worthless.

129.     Plaintiff has suffered damages exceeding US$50,000,000, together with lost interest, lost use of funds, consequential damages, restitution where available, costs, attorneys' fees where permitted, and other legal and equitable relief.

## FIRST CAUSE OF ACTION
### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5
### (Against Canaras and Saranac CLO Management)

130.     Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

131.     The notes, bonds, and other instruments purchased, acquired, redeemed, exchanged, converted, assigned, or succeeded to in connection with the Saranac CLO Programs are securities within the meaning of Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10). Alphatur was an actual purchaser, acquirer, assignee, exchanger, transferee, successor, or person otherwise entitled to enforce the relevant securities and claims before filing this action, as reflected in **Exhibit 1**.

132.    Defendants, directly or indirectly, by use of the means and instrumentalities of interstate commerce and the mails, and in connection with the purchase, sale, redemption, exchange, conversion, or assignment of the securities alleged in this Complaint, employed devices, schemes, and artifices to defraud; made untrue statements of material fact; omitted material facts necessary to make statements made not misleading in light of the circumstances under which they were made; and engaged in acts, practices, and courses of business that operated as a fraud and deceit on Plaintiff.

133.    The actionable misstatements and omissions for the federal securities claim include, without limitation, the pre-transaction and transaction-related representations and omissions described above concerning collateral protection, collateral release restrictions, trustee oversight, collateral administration, ownership recognition, entity status, redemption and exchange mechanics, collateral deterioration, negative equity, dissolution events, and the true cause and extent of Plaintiff's loss. Post-investment and presuit statements are pleaded as evidence of concealment, scienter, loss causation, and related state-law and equitable claims to the extent legally available, not as a standalone holder-only securities theory.

134.    Defendants acted with scienter for the reasons alleged above, including their roles, access to records, knowledge of collateral release restrictions, knowledge of collateral deterioration, knowledge of entity status, knowledge of ownership record irregularities, financial incentives, concealment conduct, and reckless disregard for the truth of communications made to Plaintiff.

135.    Plaintiff reasonably and justifiably relied on Defendants' misrepresentations and omissions, including by purchasing, acquiring, exchanging, converting, being assigned, accepting, or succeeding to rights in the CLO Programs, and by relying on Defendants' superior access to

36

collateral, trustee, ownership, entity, and transaction records. Plaintiff does not base the federal securities claim solely on maintaining or holding securities after purchase.

136.    Defendants' violations caused Plaintiff's damages. The concealed collateral releases, collateral deterioration, recordkeeping failures, ownership recognition failures, entity dissolutions, and related omissions caused the value and recoverability of Plaintiff's investment to collapse, resulting in losses exceeding US$50,000,000.

137.    Plaintiff is entitled to compensatory damages, pre and post-judgment interest, costs, and all other relief permitted by law.

## SECOND CAUSE OF ACTION
### Control Person Liability under Section 20(a) of the Exchange Act
### (Against Canaras and Saranac CLO Management)

138.    Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

139.    Canaras and Saranac CLO Management directly or indirectly controlled the issuer entities, Saranac related entities, collateral management functions, advisory functions, investor communications, offering materials, collateral release process, redemption and exchange process, ownership record process, and other persons or entities that committed the primary violations of Section 10(b) and Rule 10b-5 alleged in this Complaint.

140.    Canaras and Saranac CLO Management had the practical and contractual power to direct or influence the specific conduct that gave rise to the primary violations, including the content and distribution of offering materials, investor presentations, Program Reviews, account summaries, and investor communications; the management or approval of collateral administration and collateral release decisions; the treatment of redemptions, exchanges, assignments, conversions, and ownership records; and the content of disclosures or omissions concerning collateral impairment, entity status, and ownership recognition.

37

141.    Canaras and Saranac CLO Management were culpable participants in the misconduct alleged in this Complaint because they knew or recklessly disregarded the false or misleading nature of the statements and omissions, the impairment of collateral, the status and use of the Saranac entities, the ownership and recordkeeping irregularities affecting Alphatur, and the risk that Plaintiff's investment and enforcement rights would be destroyed.

142.    Canaras and Saranac CLO Management are jointly and severally liable with the primary violators, and to the same extent, under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

### THIRD CAUSE OF ACTION
**Breach of Contract and Specific Trustee and Collateral Administrator Duties
(New York Law, Against U.S. Bank, Canaras, and Saranac CLO Management to the
Extent Each Was Bound by the Relevant Transaction Documents)**

143.    Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

144.    The Indentures, Collateral Management Agreements, Collateral Administration Agreements, offering documents, subscription documents, account documents, trustee documents, collateral documents, note documents, and related transaction documents governing the Saranac CLO Programs are binding and enforceable contracts governed by New York law or otherwise enforceable under applicable law.

145.    Plaintiff is a party, assignee, holder, beneficial owner, successor in interest, or intended third party beneficiary of the relevant transaction documents because the collateral, trustee duties, collateral management duties, reporting duties, recordkeeping duties, payment obligations, and noteholder protections were undertaken for the benefit of Plaintiff and other holders of the securities.

146.    U.S. Bank breached the relevant contracts and trustee documents by executing, recording, processing, permitting, failing to prevent, failing to investigate, failing to report, or failing to disclose collateral releases inconsistent with the governing documents; by failing to maintain, verify, or reconcile accurate noteholder, beneficial ownership, payment, register, collateral, and Trust Estate records; by failing to provide required notices of defaults, material events, collateral impairments, or ownership record discrepancies; by failing to preserve and protect the Trust Estate and security interests in collateral assets to the extent required by the documents; by failing to act prudently after notice, default, or circumstances requiring trustee action; and by breaching the duties reflected in or arising from the provisions identified above, including Sections 5.5, 6.1, 6.1(c), 6.2, 6.3, 6.16, 7.5, and 7.19 of the applicable indentures or related supplemental indenture provisions excerpted as **Exhibit 2** hereto.

147.    Canaras and Saranac CLO Management breached the relevant contracts to the extent they were parties to, bound by, obligated under, assumed duties under, performed duties under, acted through, or substantially participated in the collateral management, advisory, offering, administration, reporting, sub-advisory, service-provider, or related transaction documents by causing, directing, approving, permitting, or concealing collateral releases and related transactions inconsistent with those documents; by failing to disclose material events; by misrepresenting entity status and investment condition; by failing to maintain or reconcile ownership and transfer records; and by failing to manage and administer the CLO Programs in accordance with contractual requirements.

148.    To the extent any Defendant invokes a no action clause, limitation on suit, exculpatory provision, reliance provision, indemnity provision, Jersey forum provision, mediation provision, KYC argument, register argument, or standing argument, such provision or argument

does not bar the claims pleaded here because Alphatur alleges misconduct by the trustee itself, direct impairment of payment and collateral enforcement rights, breach of duties owed directly to noteholders or beneficial owners, nonperformance of ministerial and administrative duties, bad faith, gross negligence, willful misconduct, and claims arising from notes, indentures, collateral documents, trustee records, and federal securities law rather than a standalone SML shareholder dispute.

149. As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages exceeding US$50,000,000, together with interest, costs, fees where permitted, and other relief.

**FOURTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(New York Law, Pleaded in the Alternative Against All Defendants)**

150. Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

151. Every contract governed by New York law includes an implied covenant of good faith and fair dealing that prohibits a party from acting in a manner that destroys or injures the right of the other party to receive the benefits of the agreement.

152. To the extent Defendants contend that their challenged conduct was not expressly prohibited by the transaction documents, Plaintiff pleads in the alternative that Defendants breached the implied covenant by exercising discretion over collateral, releases, records, reports, notices, entity administration, ownership recognition, and investor communications in bad faith and in a manner that deprived Plaintiff of the fundamental benefit of the bargain.

153. Defendants breached the implied covenant by permitting or concealing collateral releases, failing to disclose material collateral impairment, failing to reconcile ownership records, asserting administrative or KYC objections after the fact, mischaracterizing entity dissolutions,

and using contractual discretion or control in a manner that undermined the collateral protections represented to Plaintiff.

154.     This claim is pleaded in the alternative and does not duplicate the breach of contract claim to the extent it addresses discretionary conduct, bad faith administration, concealment, recordkeeping manipulation, or conduct not expressly governed by a specific contractual provision but inconsistent with the purpose and benefits of the transaction documents.

155.     As a direct and proximate result of Defendants' breach of the implied covenant, Plaintiff suffered damages exceeding US$50,000,000.

**FIFTH CAUSE OF ACTION**
**Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty**
**(New York Law, Against Canaras and Saranac CLO Management, and Against U.S. Bank to the Extent Independent and/or Post Default Duties Arose)**

156.     Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

157.     Plaintiff pleads this claim in the alternative and only to the extent the duties alleged are independent of, collateral to, or not duplicative of the contractual duties alleged above. Plaintiff does not assert a generalized pre default fiduciary duty against U.S. Bank divorced from the governing trustee documents.

158.     U.S. Bank owed trust based, fiduciary, or prudent person duties only to the extent such duties arose from its trustee role after default, after notice of default, after knowledge of facts requiring trustee action, or from independent duties associated with preserving the Trust Estate, preserving security interests in collateral assets, providing required notices, maintaining accurate records, and avoiding bad faith, gross negligence, or willful misconduct. The claim against U.S. Bank is pleaded narrowly and in the alternative to the specific trustee and contract claims.

159.     Canaras and Saranac CLO Management owed fiduciary duties to Plaintiff to the extent they acted as investment advisers, collateral managers, controllers, agents, or persons

exercising discretionary authority over assets, collateral, reports, entity records, and investor communications for the benefit of Plaintiff and other noteholders.

160. Defendants breached the duties alleged in this count by authorizing, permitting, concealing, or failing to prevent collateral releases; by failing to disclose material information concerning collateral impairment and entity status; by placing their own interests or the interests of affiliates ahead of noteholders or beneficial owners; by failing to reconcile ownership, payment, and collateral records; and by failing to act prudently, loyally, and in good faith after circumstances arose requiring disclosure, preservation, investigation, or action.

161. To the extent any Defendant is found not to have owed a direct fiduciary duty to Plaintiff, that Defendant knowingly aided and abetted breaches by others by providing substantial assistance, including through structuring, management, administration, recordkeeping, collateral releases, concealment, misstatements, omissions, and failure to disclose material facts.

162. As a direct and proximate result of the breaches of fiduciary duty and aiding and abetting alleged herein, Plaintiff suffered damages exceeding US$50,000,000.

**SIXTH CAUSE OF ACTION**
**Gross Negligence and Willful Misconduct**
**(New York Law, Against All Defendants)**

163. Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

164. Defendants owed duties of care arising from their roles as trustee, collateral administrator, collateral manager, adviser, controlling entity, transaction participant, or party responsible for collateral, records, reports, releases, notices, ownership records, and administration of the Saranac CLO Programs. As to U.S. Bank, those duties are pleaded as specific trustee, collateral administrator, ministerial, administrative, recordkeeping, notice, release processing,

Trust Estate preservation, collateral security interest, and post notice or post default duties, not as a generalized obligation to guarantee investment performance.

165.    Defendants acted with gross negligence by failing to exercise even slight care, or by engaging in conduct that evinced reckless disregard for Plaintiff's rights, including by allowing collateral to be released or impaired without proper authority, failing to provide material notices, failing to maintain accurate records, failing to reconcile ownership records, and failing to disclose collateral impairment and entity status irregularities.

166.    Defendants acted willfully, recklessly, or in bad faith by concealing or failing to disclose material facts, mischaracterizing collateral deterioration and entity dissolutions, permitting or causing conflicted collateral releases, and denying or failing to reconcile Plaintiff's ownership rights in the face of records reflecting those rights.

167.    Any contractual provision purporting to exculpate or indemnify Defendants for fraud, bad faith, gross negligence, or willful misconduct is unenforceable to that extent under New York law and does not bar this claim.

168.    As a direct and proximate result of Defendants' gross negligence and willful misconduct, Plaintiff suffered damages exceeding US$50,000,000.

**SEVENTH CAUSE OF ACTION**
**Limited Equitable Relief under the Investment Advisers Act of 1940**
**(Against Canaras and Saranac CLO Management, to the Extent Applicable)**

169.    Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

170.    Canaras and Saranac CLO Management acted as investment advisers within the meaning of the Investment Advisers Act, 15 U.S.C. § 80b-2(a)(11), to the extent they, for compensation, engaged in the business of advising the CLO Programs, Plaintiff, or related entities concerning the value of securities, the advisability of investing in, purchasing, holding, redeeming,

or selling securities, or the management and disposition of securities and collateral portfolios. See **Exhibit 5** hereto.

171.    Canaras and Saranac CLO Management violated Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act, 15 U.S.C. § 80b-6, by employing devices, schemes, or artifices to defraud; by engaging in transactions, practices, or courses of business operating as a fraud or deceit; and by engaging in conduct involving undisclosed conflicts, self-dealing, collateral impairment, entity opacity, and material omissions concerning the management and administration of the CLO investments.

172.    Plaintiff seeks only the limited private equitable relief available under Section 215 of the Investment Advisers Act, 15 U.S.C. § 80b-15, and does not assert an unavailable standalone private damages claim under Section 206.

173.    To the extent any advisory, collateral management, or related agreement identified in or attached with **Exhibit 2** is void or voidable as to the rights of a violator because its formation or performance violated the Investment Advisers Act, Plaintiff seeks only the limited private equitable relief available under Section 215 of that Act, including rescission of the offending agreement to the extent legally available, restitution of fees or consideration paid to violating advisers, accounting of compensation received by such advisers where available as equitable relief, declaratory relief, and any other equitable relief permitted by law. Again, Plaintiff does not seek an unavailable standalone damages remedy under Section 206.

174.    Plaintiff also seeks an accounting of fees, compensation, transfers, collateral movements, and benefits received by Canaras, Saranac CLO Management, or their affiliates in connection with the conduct alleged herein.

175. As a direct result of the violations alleged herein, Plaintiff has been deprived of the fiduciary protections, disclosure, loyalty, and candor required of advisers to the extent those duties are legally applicable to the advisory or collateral-management relationships at issue, and is entitled only to the limited equitable relief legally available under the Investment Advisers Act.

### EIGHTH CAUSE OF ACTION
### Rescission and Restitution
**(New York Law and Equitable Principles, Against All Defendants to the Extent Applicable)**

176. Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

177. Plaintiff invested in and maintained the Saranac CLO investments in reliance on material misrepresentations and omissions concerning collateral protection, trustee oversight, collateral release restrictions, entity status, redemption and exchange mechanics, ownership recognition, and the true condition of the collateral.

178. The transactions were induced by fraud, material misrepresentation, material omission, mistake, failure of consideration, or concealment of facts that went to the essence of the investment.

179. Plaintiff is entitled to rescission of the relevant investment transactions only to the extent rescission is legally available against the relevant Defendant, restitution of consideration or benefits received by a Defendant, restoration of collateral or traceable proceeds where available, pre- and post-judgment interest, and related equitable relief. Plaintiff does not seek to use rescission as a substitute for an unavailable damages remedy.

180. To the extent full rescission is unavailable or impracticable, Plaintiff seeks restitution, restoration, constructive trust, accounting, or other equitable relief only to the extent legally available, and seeks legal damages only under independently pleaded causes of action that authorize such relief.

## NINTH CAUSE OF ACTION
### Declaratory Judgment and Accounting
### (28 U.S.C. § 2201, New York Law, and Equitable Principles, Against All Defendants)

181. Plaintiff repeats and realleges paragraphs 1-129 as if fully set forth herein.

182. An actual and justiciable controversy exists between Plaintiff and Defendants concerning Plaintiff's ownership and enforcement rights, the validity and effect of collateral releases, the status of the collateral, the status of the Saranac entities, the effect of alleged KYC or registration issues, the validity of any redemption or exchange of interests, and Defendants' continuing duties under the transaction documents and applicable law.

183. Plaintiff seeks a declaration that Alphatur owns, holds, or is entitled to enforce the economic rights and claims arising from the Saranac CLO investments described in this Complaint.

184. Plaintiff seeks a declaration that unauthorized, inadequately authorized, undisclosed, conflicted, or commercially unreasonable collateral releases are void, voidable, ineffective as against Plaintiff, or actionable against Defendants to the fullest extent permitted by law.

185. Plaintiff also seeks a declaration concerning the effect, if any, of Defendants' asserted KYC, register, activity report, liquidation, Jersey forum, and SML subscription positions on Alphatur's ownership, beneficial interest, assignment rights, economic rights, and ability to enforce claims arising from the Saranac CLO investments.

186. Plaintiff further seeks a declaration that Defendants must provide a complete accounting of collateral releases, collateral substitutions, asset removals, Trust Estate movements, payments, redemptions, exchanges, ownership registers, noteholder records, KYC files, liquidation records, and communications affecting Plaintiff's interests.

46

187.    Plaintiff seeks a declaration that Defendants remain obligated to preserve and account for all collateral, proceeds, records, registers, reports, entity documents, redemption records, exchange documents, KYC records, and transaction records affecting Plaintiff's rights.

188.    Plaintiff is entitled to an accounting because Defendants controlled or had superior access to the collateral, registers, records, reports, trustee materials, collateral administration materials, bank accounts, transfer records, entity documents, and transaction information necessary to determine the status and disposition of Plaintiff's investment and collateral.

189.    Plaintiff has demanded information and has not received a complete, accurate, reconciled, and transparent accounting sufficient to establish the full collateral history, ownership chain, transfer history, release history, entity status, and present recoverability of Plaintiff's investment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alphatur Inc. respectfully demands judgment against Defendants, jointly and severally where permitted by law, as follows:

(a) Awarding compensatory damages in an amount to be determined at trial, but not less than US$50,000,000;

(b) Awarding damages where available, restitution where available, accounting where available as equitable relief, and all relief permitted under Section 10(b), Rule 10b-5, and Section 20(a) of the Exchange Act;

(c) Awarding contractual damages, consequential damages, interest, and all remedies available for breach of contract and breach of the implied covenant of good faith and fair dealing;

(d) Awarding damages and equitable relief for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, gross negligence, and willful misconduct;

(e) Awarding the limited equitable relief available under the Investment Advisers Act and Section 215 of that Act, including rescission, restitution, accounting, declaratory relief, and other equitable relief to the extent legally available and only as to any agreement whose formation or performance violated the Act;

(f) Ordering rescission, restitution, restoration of collateral or traceable proceeds, constructive trust, and related equitable relief to the extent legally available;

(g) Declaring that Alphatur owns, holds, or is entitled to enforce the economic rights and claims arising from the Saranac CLO investments described in this Complaint;

(h) Declaring that unauthorized, inadequately authorized, or concealed, collateral releases are void, voidable, ineffective as against Plaintiff, or actionable against Defendants to the fullest extent permitted by law;

(i) Ordering Defendants to provide a complete accounting of collateral, proceeds, releases, transfers, registers, reports, records, redemption documents, exchange documents, KYC records, entity documents, communications, and all other information affecting Plaintiff's investment;

(j) Granting permanent injunctive relief prohibiting further unauthorized release, transfer, dissipation, concealment, destruction, impairment, or disposition of collateral, proceeds, records, registers, entity documents, or other property or information affecting Plaintiff's rights;

(k) Awarding prejudgment and post-judgment interest at the maximum rate permitted by law;

(l) Awarding Plaintiff its attorneys' fees, costs, and disbursements to the fullest extent permitted by law, contract, statute, or equity; and

48

(m) Granting such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 3, 2026.

Respectfully submitted,

*Plaintiff's counsel*

WDA Legal
848 Brickell Ave., suite 1000
Miami, FL 33131
Tel. 305-988-8003
Hernando.diaz@wdalegal.com
Gabriella.hormazabal@wdalegal.com

By: /s/ *Hernando Diaz-Candia*
Hernando Diaz-Candia, Esq.
NY Bar Registration No. 2735587